## Martin V. B. Morse v. Horatio R. Smith.

The return of an officer that he has attached certain goods of the debtor's, is conclusive evidence of the attachment as against the debtor and those claiming under him by a subsequent purchase with notice.

Where an officer undertook to attach a wagon, harness and buffalo robe, which were at the creditor's house, and in the officer's presence and control, and also a horse in the barn of another not far distant, and the debtor being present and wishing to prevent the removal of the goods, agreed with the officer and creditor that these articles, including the horse, should be in the keeping of the creditor, who should hold them as attached, for the officer, who thereupon went away without seeing the horse, and the creditor soon after went to the barn and fed the horse; it was *held* that it was competent for the jury on this evidence to find that the horse was within the control of the officer, and that a valid attachment was made.

Trover for a horse, wagon, harness and buffalo robe. The plaintiff claimed as bailee of the officer, who served a writ of attachment in the suit of this plaintiff against one Still. The officer made return that he attached the articles sued for and sundry others on that writ as the property of Still on the 26th of March, 1866.

It appeared that Still had boarded, and was then boarding, with the plaintiff, and the plaintiff's suit against Still was to recover pay for his board. Still was a glass-blower, and also kept a small shop near the plaintiff's house in Stoddard. The wagon, harness and buffalo were at or near the plaintiff's house, and the horse was kept by Still, not far distant, in the barn of one O'Neil. The plaintiff's evidence tended to show that the officer, on the 26th of March, 1866, went with the writ to the plaintiff's house; that Still was then sent for and came from the place where he was at work, and was then told by the officer that he had come to attach the articles sued for and some goods in the shop, on that writ; that Still then requested the officer that the goods might not be taken and removed so as to make any public stir; that by the consent of Still and at his request it was agreed between the plaintiff, Still and the officer, that the horse, wagon, harness and buffalo robe should be in the keeping and charge of the plaintiff; that he should hold them as attached, for the officer, on the writ, and that the officer, a little before noon on that day, left the goods in the charge of the plaintiff under that arrangement and returned to Keene.

At this time the wagon, harness and buffalo robe were near the plaintiff's house, and in sight; but the horse was in O'Neil's barn, and was not seen by the officer. The horse was named, at the time when the arrangement before mentioned was made, as part of the property attached. The officer did not take any manual possession of the property.

About noon, after the officer had gone, the plaintiff and Still went to feed the horse in O'Neil's barn; the plaintiff gave the horse some hay, and Still gave him some meal. O'Neil had no notice of any attachment, or that the horse was in charge of the plaintiff until the horse was taken away by Still.

The same afternoon, without the consent or knowledge of the plaintiff, or the officer, Still took the horse, wagon, harness and buffalo robe, drove about four miles to another part of the town, and there sold them

all to the defendant. The consideration of the sale, as stated by the defendant, was thirty dollars in money, and the undertaking of the defendant to carry Still to Keene and back that night, and then send him to Peterborough, which was done by the defendant, and Still then left this part of the country and has not returned.

The court instructed the jury, that, to make the attachment, the officer must have obtained the control of the property by an actual manual taking or by some arrangement that gave him the control of it; that, if it was agreed between Still, the plaintiff, and the officer that the property should be considered as attached on the writ; that the property should be in the control of the plaintiff as keeper for the officer; and the plaintiff took and retained the control of it under that arrangement, so that pursuant to the arrangement Still could not take or use it, this would make a valid attachment so far as Still was concerned, and all others who had notice of the attachment; that if there was no visible change of the property such as would give notice that there was an attachment or some other change in the title, and the defendant was a fair purchaser without notice or knowledge of such facts and circumstances as should lead him to inquiries which would give him information of the attachment, he would hold the property under the sale against the plaintiff and the officer; but that if the defendant had such notice or knowledge he would not hold against the attachment, if so made.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside for error in the foregoing instructions.

*Wheeler & Faulkner,* for plaintiff.

1. The instructions to the jury were sufficiently favorable to the defendant. As between these parties, the officer's return was *conclusive* evidence of the attachment. *Angier* v. *Ash,* 26 N. H. 99; *Messer* v. *Bailey,* 31 N. H. 9; *Clough* v. *Monroe,* 34 N. H. 381; *Lathrop* v. *Blake,* 23 N. H. 46; *Dickinson* v. *Lovell,* 35 N. H. 9.

2. The verdict of the jury establishes the fact, that the defendant was not "a fair purchaser without notice, or knowledge, of such facts and circumstances as should lead him to inquire, which would give him information of the attachment." It is not, therefore, material, whether the plaintiff retained actual possession of the property, or not; if he allowed it to remain in the possession of the debtor it was upon the mutual understanding that the attachment was still to subsist; and, as against the debtor, or any one having notice of the attachment, it would not be defeated by the fact that possession was not retained by the plaintiff. *Cooper* v. *Newman,* 45 N. H. 339; *Houston* v. *Blake,* 43 N. H. 116; *Treadwell* v. *Brown,* 43 N. H. 292.

3. There is, however, no evidence of abandonment of possession by the plaintiff. The property, having been placed in the custody of the plaintiff by consent of the owner, was, within a few hours, surreptitiously taken by the debtor and sold to the defendant.

Had the defendant been a *bona fide* purchaser, without notice of the attachment, he would not, under these circumstances, hold the property

as against the plaintiff. The special property acquired by the plaintiff in the articles attached could not be divested without proof of some want of due diligence in keeping it on his part. *Young* v. *Walker*, 12 N. H. 502; *Gordon* v. *Jenney*, 16 Mass. 465.

*Woodward & Wellington*, for defendant.

·The case finds that the horse was in O'Neil's barn, and *was not* seen by the officer; that there was no possession taken by the officer, and nothing done any further than an agreement; that no possession was taken by the plaintiff as pretended bailee, except that he fed the horse some hay, and the last act was that of Still when he gave the horse some meal. O'Neil knew nothing about it, and the officer from his own knowledge could not have known even that Still had a horse. Now we contend that the officer could give no more possession than he himself had; that any act of the bailee in obtaining first possession, not in the presence of the officer, was nothing; that no possession, in fact, could be obtained when not in sight of the horse; and that to obtain possession it was necessary that O'Neil, in whose possession the horse actually was, should be notified of the fact of the attachment and of the change, otherwise the possession remained the same.

In the case of *Nichols* v. *Patten*, 6 Shep. 231, the court held, that, to make a valid attachment, it was necessary that the officer should be in view of the property with a power of controlling it, and though he does not have manual possession, yet he must obtain actual possession and custody. *Lane et al.* v. *Jackson*, 5 Mass. 163; *Dunklee* v. *Fales*, 5 N. H. 528; *Young* v. *Walker*, 12 N. H. 502.

In the case of *Cooper* v. *Newman*, 45 N. H. 339, the officer took actual possession, and was in view of the property, for which reason it· is not an authority on this point.

It appears to us, from the authorities generally, that here there was no attachment; the officer's return that he attached the horse, should not be held conclusive between the parties in this suit, as the defendant was not privy to the suit of *Morse* v. *Still*, and was not interested in the action.

The fact that after the officer had left, Still and the plaintiff went to the barn when Morse gave the horse some hay, and Still thereupon fed the horse some meal, is no evidence of any possession of the horse by Morse, or that he ever took possession. It is, rather, evidence of the continued possession of Still, and confirmed by the fact that there was no visible change, nor any notice to O'Neil. This appears, we think, from the facts stated in the case.

Supposing Morse did have possession of the property, it would then be required of Morse to exercise due vigilance to obtain possession. But the case shows that he took no care in this respect. He ought not now to maintain a suit caused by his own neglect, other things being equal.                                        •

We think, from these views, the defendant's title ought, from facts

stated in the case, to be good against Morse, and that the instructions of the court were exceptionable.

BELLOWS, J. The motion is to set aside the verdict for error in the instructions to the jury, and the only question, therefore, is, whether those instructions were correct or not. Upon a careful examination of them, we are satisfied that they were sufficiently favorable to the defendant, inasmuch as the jury were permitted to determine, upon the proofs adduced, and upon directions which we deem correct, as to what constitutes an attachment, whether, in fact, a valid attachment was made; whereas, in truth, the return of the officer was conclusive against the defendant, having notice of such attachment.

The defendant here claimed by a purchase of the debtor subsequent to the attachment; and the jury have found that he purchased with notice of that attachment; and under those circumstances the return of the officer that he had attached the goods is conclusive.

The law is now well settled in New Hampshire, that the return of an officer of an attachment of personal property is conclusive, as to all facts material to be returned, between the parties to that suit, and those claiming under them as privies, and all others whose rights and liabilities are dependent on the suit, as bail and endorsers. The leading case on this subject is *Brown* v. *Davis*, 9 N. H. 76, where the authorities were reviewed and carefully considered, and an able opinion delivered by *Parker*, *J.* The question was as to the validity of the attachments by two officers of the same goods, in suits against the same debtor, one returned as made on the eighth day of November, and the other on the tenth of the same month. The party making the latter offered evidence that no seizure of the goods was actually made by the former on the eighth of November, and that he was not where he could have taken possession of them. The court, however, decided on a case reserved, that the evidence was inadmissible, and that the return could not be contradicted by the subsequent attaching creditor claiming title under the same party.

The general doctrine is fully recognized in *Lewis* v. *Blair*, 2 N. H. 68; *Hall* v. *Tenney*, 11 N. H. 516; *Atherton* v. *Gilmore*, 9 N. H. 185; *Parker* v. *Guillow*, 10 N. H. 103; *Lathrop* v. *Blake*, 23 N. H. 67; *Angier* v. *Ash*, 26 N. H. 99; *Messer* v. *Bailey*, 31 N. H. 9; *Dickinson* v. *Lovell*, 35 N. H. 16. In this last case, a privity in estate is said to be a "person who must necessarily derive his title to the property in question from a party bound by a judgment return, &c., subsequently to such judgment, return, &c., and therefore it was held that one who had derived his title before such return, though from the same party, was not bound. It will be perceived, also, that *Brown* v. *Davis*, before cited, holds the same doctrine, and without any regard to the fact whether there was or was not notice of the attachment.

Upon these authorities the purchaser in this case subsequent to the attachment, would seem to be bound by the return whether he had notice or not. At all events, we have no doubt, that, as to the debtor, Still, the return is conclusive evidence of a valid attachment, and that a subsequent purchaser of Still with notice would be bound by it. There

are cases where, although a valid attachment has been made, the officer will lose his lien by suffering the goods to go back into the possession and control of the debtor, when they are attached by another creditor without notice of the prior attachment. If he have notice, however, of the attachment, and that it still subsists as between the debtor and the first attaching officer, his subsequent attachment will avail nothing. *Young* v. *Walker*, 12 N. H. 502; *Treadwell* v. *Brown*, 43 N. H. 292, and cases cited.

Upon these grounds, without going further, we think the verdict must be sustained. Besides, we think there was evidence upon which the jury might have found a valid attachment of the horse and the other property, even if the return had not been conclusive. The case finds that the wagon, harness and buffalo robe were at or near the plaintiff's house; that the officer went there with his writ, and Still was sent for, and when he came the officer told him he had come to attach these articles, together with the horse, which was in O'Neil's barn not far distant, and also some goods in the shop; that Still requested that the goods might not be taken and removed so as to make any public stir; and it was agreed by the officer, Still, and the creditor, this plaintiff, that the horse, wagon, harness and buffalo robe should be in the charge and keeping of the plaintiff, and the officer left a little before noon. At this time the wagon, harness and buffalo were in sight, but the horse was not seen by the officer. At noon the plaintiff went to the barn and fed the horse with hay, and at the same time Still gave him some meal.

Here was no manual possession of the goods by the officer, but we think the jury might have found it within his control. The wagon, harness and buffalo were present and in sight, and although he could not see the horse, the jury might have found it was within his control. He assumed to attach it with the rest, it may have been all within his reach, as much as goods in a store, or furniture in the remote parts of a house which the officer could not see; the debtor assented to the attachment, and for his convenience it was put into the possession of the plaintiff as bailee, by agreement of the debtor, officer and plaintiff, putting it upon substantially the same footing as if the debtor had procured a receipter for the goods; and thereupon the plaintiff proceeds to feed the horse in company with the debtor. It is objected that the officer did not see the property, but we do not think this is essential. It was in a barn where the debtor kept it near by; the officer knew where it was; it was in his control as much as if he saw it, and that is the essential point, as in the case of goods in a store. He assumed to attach it, and the debtor assented and joined in an arrangement for its safe keeping for the officer, and the bailee did what the jury might well have found was taking possession of it, and the jury also have found that the officer obtained the control of the horse and the rest of the property.

Upon this evidence we have no doubt that the jury might legally have found, as against the debtor, an attachment of the property including the horse, and if so, as there was notice to the defendant, he also is bound. These views are supported by the decision in *Treadwell* v. *Brown*, 43 N. H. 290, holding that there must be an actual seizure or its equiva-

lent; and see cases cited therein on pages 291–2, and *Cooper* v. *Newman*, 45 N. H. 339.

*Judgment on the verdict.*